IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANNETTE R.,[1]

    Plaintiff,

v.

ANDREW M. SAUL,[2]
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

No. 19-1082-JWL

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Supplemental Security Income (SSI) benefits pursuant to sections 1602, and 1614(a) of the Social Security Act, 42 U.S.C. §§ 1381a, and 1382c(a) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff filed an application for SSI on August 4, 2016. (R. 15, 163-68). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision. Plaintiff claims the ALJ erred in evaluating the medical opinions of psychologists Dr. Simmons and Dr. Tomak. (Pl. Br. 7).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

2

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Discussion

Plaintiff argues the ALJ accorded substantial weight to both psychologists' (Dr. Simmons and Dr. Tomak) opinions but portions of the opinions conflict with the RFC assessed. (Pl. Br. 7). She points out that an "ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Id. at 8 (quoting Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. April 3, 2007). Plaintiff claims the ALJ's "RFC assessment does not address [her] propensity for absenteeism or inability to consistently complete a forty-hour workweek" as opined by both Dr. Simmons and Dr. Tomak. Id. She argues the ALJ did not explain why he rejected these portions of the opinions and did not resolve the ambiguities or material inconsistencies created thereby. Id. at 8-9.

The Commissioner argues that the ALJ's mental RFC (MRFC) assessment was a reasonable assessment based upon the record medical opinions including those of Dr. Simmons and Dr. Tomak. (Comm'r Br. 6-7). He argues the ALJ explained his evaluation of the psychologists' opinions and the MRFC assessed and "the ALJ's interpretation of Dr. Tomak's and Dr. Simmons's opined limitations was a reasonable interpretation of the evidence." Id. at 8-9. He argues that Plaintiff's argument is based on her view of the psychologist's opinions and even if it is a reasonable view of the opinions, the ALJ's assessment must prevail because where the record supports two (or more) inconstant conclusions, if the Commissioner's conclusion is one of them it must be accepted. Id. at 12

In her Reply Brief, Plaintiff argues:

Here, the ALJ was very clear what limitations within each opinion he found credible. There is no case law or regulation that allows the ALJ to then omit those limitations without explanation. There is also no case law that allows the ALJ to reinterpret medical opinions.

(Reply 2).

### A. The ALJ's Assessment

In his step three evaluation the ALJ found Plaintiff has a moderate limitation in each of the four broad mental functional areas used in evaluating the severity of mental impairments at steps two and three of the sequential evaluation process—understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 18-19). And, in assessing

5

each of those areas, the ALJ cited Dr. Simmons's report (Ex. 9F, R. 387-94) as one basis for his assessment. (R. 18-19).

The ALJ assessed Plaintiff's MRFC:

The individual can understand, remember, and execute simple, routine instructions consistent with unskilled work, and can maintain concentration, persistence, and pace in so doing. The individual can perform low-stress work, defined as only occasional changes in a work setting, requiring only occasional decision-making, and in which the individual has some control over the pacing of the work subject to ordinary overall production requirements. The individual may occasionally interact with supervisors, but cannot tolerate close "over-the-shoulder" supervision. The individual may occasionally interact with colleagues if meetings are brief and task oriented, but may not interact with the public.

(R. 19-20) (finding No. 4) (bold omitted). In assessing RFC, the ALJ found Plaintiff's allegations of disabling symptoms are "not entirely consistent" with the record evidence and Plaintiff does not contest that finding. (R. 20).

The ALJ summarized the evidence regarding Plaintiff's mental impairments:

As for her mental impairments, the claimant was diagnosed with major depressive disorder (recurrent, moderate) and generalized anxiety disorder and prescribed medication. (Exhibit 9F; 12F; 20F.) However, in a March 2017 consultative examination, she reported she stopped taking her antidepressant medications due to side effects and noted the last time she took her medication was over a year ago. (Exhibit 9F/3.) The claimant attends individual therapy. She reports poor sleep, social withdrawal, crying spells, depressed feeling, anxiety and tension, lack of motivation, difficulty concentrating, excessive sleep, and not wanting to leave her home. (Exhibit 7F; 9F; 12F.) The claimant's difficulties appear to mostly relate to personal conflict with her daughter, financial problems, and relationship issues. (Exhibit 7F.) Mental status examinations during mental appointments are fairly unremarkable, with findings the claimant appears depressed and anxious but she has appropriate appearance, good insight and judgment, appropriate affect, normal orientation, intact memory, intact attention and concentration, appropriate thought content, and normal perception and thought flow. (Exhibit 3F/6; 12F/5; 20F/6, 9, 11.) Mental status examinations during physical health appointments are

6

likewise normal, with findings the claimant is alert, oriented, and with normal behavior and mood. (Exhibit 6F/35; l0F/5; 15F/3, 17; 18F/6.) At times, the claimant denies depression and anxiety. (Exhibit 15F/15.)

(R. 21). The ALJ Explained his MRFC assessment and his evaluation of the medical opinions related thereto:

> Due to the claimant's depression and anxiety, the undersigned finds she can understand, remember, and execute simple, routine instructions consistent with unskilled work, and can maintain concentration, persistence, and pace in so doing. The individual can perform low-stress work, defined as only occasional changes in a work setting, requiring only occasional decisionmaking, and in which the individual has some control over the pacing of the work subject to ordinary overall production requirements. The individual may occasionally interact with supervisors, but cannot tolerate close "over-the-shoulder" supervision. The individual may occasionally interact with colleagues if meetings are brief and task oriented, but may not interact with the public. These limitations fully account for the claimant's alleged discomfort around others, anxiety attacks, lack of motivation and energy, difficulty making decisions, and objective findings of mild cognitive impairment.
>
> In determining the residual functional capacity, the undersigned gives substantial weight to the opinion of the consultative examiner Suzan B. Simmons, PhD, who opined the claimant would have low tolerance for discomfort; it is questionable whether she would be able to keep up the pace with a job that requires timeliness due to her inability to handle stress; her mental impairments would interfere with her memory and concentration; and she <u>would likely have difficulty being a consistent employee</u>. (Exhibit 9F.) The undersigned finds these opinions are significantly supported by the record as a whole, and thus restricts the claimant's mental abilities as set forth in the residual functional capacity. The limitation to simple, routine instructions, low-stress work with occasional changes and decision making, control over pace, and limited interaction with others, fully accounts for the claimant's mental limitations.
>
> The undersigned gives little weight to the opinion of the state agency … psychological consultant at the initial level, who opined the claimant's mental impairments are non-severe. (Exhibit 2A.) Subsequent evidence produced at the hearing level establishes the claimant's mental impairments are severe in that they result in some mental functional limitations, as discussed above in paragraph 3. [(finding No. 3, R. 18).] The undersigned

7

> gives substantial weight to the opinion of the state agency psychological consultant on reconsideration, Sheri L. Tomak, PsyD, who opined the claimant has severe mental impairments that result in moderate mental functional limitations. (Exhibit 4A.) Dr. Tomak opined the claimant can remember and understand simple instructions and work procedures; she can fairly remember detailed instructions; she can follow simple instructions and procedures and make simple decisions; she can <u>fairly sustain attention and perform at a consistent pace</u>; she can moderately limited [sic] in the ability to interact with others; and the claimant can fairly respond appropriately to changes in work and set goals independently. The undersigned finds the opinion is mostly supported by the record as a whole, including the minimal therapy records, the claimant's daily activities, and few negative objective findings. However, the undersigned finds the claimant is slightly more limited than Dr. Tomak opined, so assigns greater limitations in the residual functional capacity, based on the claimant's hearing testimony and subsequent therapy records.

(R. 21-22) (underlines added).

### B. Analysis

Plaintiff's claim is based upon her view of Dr. Simmons's opinion—that Plaintiff "would likely have difficulty being a consistent employee,"—and of Dr. Tomak's opinion—that Plaintiff "only had a 'fair' ability to 'maintain a regular 40 hour work schedule.'" (Pl. Br. 8) (citing R. 393 and quoting R. 77). Plaintiff understands these opinions to express Plaintiff's "propensity for absenteeism or inability to consistently complete a forty-hour workweek," <u>id.</u>, and argues that the ALJ ignored or rejected these limitations without explaining why or resolving the inconsistencies or ambiguities created thereby. <u>Id.</u> at 8-9.

However, as underlined in the ALJ's evaluation quoted above, the ALJ accepted Dr. Simmons's opinion that Plaintiff "<u>would likely have difficulty being a consistent employee</u>," and interpreted Dr. Tomak's opinion as stating Plaintiff can "<u>fairly sustain

8

<u>attention and perform at a consistent pace</u>." As noted above, to overturn the ALJ's finding of fact the court "must find that the evidence not only <u>supports</u> [Plaintiff's] conclusion, but <u>compels</u> it." Elias-Zacarias, 502 U.S. at 481, n.1. That is the question the court now addresses.

>Dr. Simmons stated a summary of her report:
>
> Annette has struggled with depression and anxiety as well as migraines since her school years. She has not held a job for more than eight months and has had few jobs. She has had difficulty with medication treatment for her depression. She appeared to have a low tolerance for any type of discomfort, mentally or physically. She sleeps most of her days and has low energy and motivation. <u>There is question that she would be able to keep up with pace in a job that requires timeliness due to her inability to handle even minimal levels of stress</u>. To what extent personality traits or her history of head injury play a role is unknown. Her depression and anxiety is likely to interfere with her memory and concentration. <u>She is likely to have difficulty being a consistent employee</u>. She is needing to follow up with treatment for her migraines and continue with mental health services. It is perceived that Annette can handle any cash benefits that are awarded to her.

(R. 392-93) (underlines added). While this report might be reasonably interpreted to suggest that Plaintiff may be plagued with absenteeism and inconsistent in completing a work week, it might also be reasonably interpreted to suggest her performance as an employee will be inconsistent in quality, pace, memory, or concentration. It does not compel the interpretation Plaintiff advances. In fact, nowhere does Dr. Simmons mention absenteeism, irregular attendance, or punctuality over a work-week.

Dr. Tomak, on the other hand, mentioned a 40-hour work schedule. In her assessment of Plaintiff's sustained concentration and persistence limitations she opined Plaintiff is moderately limited in four of the constituent mental abilities: the ability to

9

carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to maintain a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 77). She then explained Plaintiff's sustained concentration and persistence capacities and/or limitations in narrative form. Id. As it relates to a workweek, she explained: "The [claimant] has a fair ability to sustain attention throughout extended periods of time, perform at a consistent pace and maintain a regular 40 hour work schedule." Id.

Plaintiff has not shown that the psychologists' opinions regarding sustained concentration and consistence compel a finding that Plaintiff would have excessive absenteeism ("absent more than one day per month on an unscheduled basis" (R. 54)) or be unable to consistently complete a forty-hour workweek. Moreover, she has not shown that the ALJ ignored or rejected the psychologists' limitations. As shown by the court's quotation of the ALJ's analysis, he clearly did not ignore or reject the psychologists' opinions, he merely understood them differently than Plaintiff does.

As the Commissioner noted in his Brief, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo." (Comm'r Br. 12) (quoting Lax, 489 F.3d at 1084).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated February 11, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**